## JOHN BOYD v. THE STATE.

### No. 3135.   Decided May 23, 1906.

**1.—Rape—Continuance—Testimony not Probably True.**

Where upon trial for rape the defense was an alibi, and defendant's contention in his application for continuance was that the absent witness was with him during most of the day of the alleged offense, and all the other witnesses testified that said witness was not with defendant, and that the absent witness could not have so sworn, there was no error in overruling the motion.

**2.—Same—Identification of Defendant—Bill of Exceptions.**

A defendant who was on trial for rape had no right to have himself escorted into court by four other negroes as a means of testing the knowledge of the prosecutrix as to his identity; and where the bill of exceptions did not point out any injury resulting to the defendant, in the court's refusal to have the defendant brought into court in this way, there was no error.

**3.—Same—Jury and Jury Law—Juror Excused.**

Where upon trial for rape, it developed that one of the jurors impaneled in the case had sickness in the family, and it was left by the court to defendant to excuse the juror which defendant refused, there was no error.

**4.—Same—Evidence—Bill of Exceptions.**

Where upon trial for rape, the prosecutrix was permitted to testify to the ages and number of her children, especially as to the two months old baby which she had in her lap, and the bill of exceptions did not show any injury to the rights of the defendant, there was no error.

**5.—Same—Clothing of Defendant—Evidence—Identification.**

On trial for rape, there was no error in admitting the clothing of the defendant in evidence which he had worn on the day of the alleged offense, defendant's identification being largely dependent upon the clothing he wore during the commission of the offense and which prosecutrix described fully before his arrest, and the clothing being fully identified as that of defendant.

**6.—Same—Credibility of Defendant—Guilty of Other Crime.**

Upon a trial for rape, there was no error on cross-examination of defendant to show that he was indicted for burglary of two houses in the immediate neighborhood where the crime was committed; although it was doubtful whether the testimony which related to the immediate neighborhood was admissible, yet there being no specific objection to this feature of the testimony, there was no error.

**7.—Same—Sufficiency of the Evidence—Foot Prints.**

Where upon trial for rape, the identification of defendant by prosecutrix was positive, not only in his personal appearance but strongly aided by the clothing he wore and the foot prints which corresponded to the shoes which defendant wore; and defendant's alibi was of a weak character, a conviction inflicting the death penalty was not disturbed.

Appeal from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

Appeal from a conviction of rape; penalty, death.

The State's testimony in this case shows an assault by force upon the prosecutrix in which defendant choked and forced her to the ground and committed rape upon her without her consent, and that prosecutrix resisted to the utmost to prevent him from perpetrating the crime; that the assault was made upon her by the defendant near her house in the absence of her husband, with no one present except her little children, the oldest of whom was a little over 5 years old.

This with the statement contained in the opinion is sufficient for an understanding of the assignments of error.

*L. D. Brown,* for appellant.—On question of admitting clothes in evidence: Smith v. State, 42 Texas, 444.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of rape, and his punishment assessed at death.

When the case was called for trial, appellant filed an application for continuance on account of the absence of the witness Griffin, by whom he expected to prove that he was with defendant from about 9 o'clock a. m. until about 4 o'clock p. m. on the day of the alleged offense, except about thirty minutes during the noon hour; and that defendant was in the town of Schulenberg, Texas, during all of said time; and that he cannot prove said facts with certainty by any other witness. Viewed in the light of the testimony we are of opinion that the witness would not have so sworn, and is not probably true if he had. Appellant's testimony in his own behalf does not mention the fact that he was with Griffin during the hours mentioned in the application. In fact no witness testified that the parties were together during that time. One witness does testify that Griffin was working at one of the livery stables in Schulenberg during that day; but no one puts him with defendant during the time mentioned; and his testimony rather negatives the idea they were together. In fact, the testimony is of such a character that it excludes the idea that Griffin was with appellant or knew the whereabouts of appellant during those hours.

Appellant's attorney explained to the court that the identification of appellant was in doubt and was the vital question in the case, and for that reason he did not wish appellant brought into court or into the presence of the prosecutrix alone, and asked the court to grant an order directing the sheriff not to bring appellant into court alone, but to bring him in company and sit him with four other negroes, whom appellant had brought for that purpose. The court replied, as appellant's counsel understood, "you shall have the order," or as the

judge says, "If you can get the sheriff to do so, it will be all right." Instead of bringing them in together, the other negroes had been placed, and appellant brought in by the sheriff alone. Appellant was seated in the prisoner's dock alone. The court approves this bill, with the explanation: "I told counsel I would not order the sheriff as he re-. quested, as it might interfere with the proper care and safety of the prisoner. I did not order the sheriff as to the other facts stated. I know nothing of the fact. The statement of facts will upon that point show the facts. I heard no exception taken to the action of the court touching same." We do not believe there is any error by shown by this bill. It was not a right of appellant to have himself escorted into court by four other negroes, as a means of testing the knowledge of the prosecutrix as to his identity. If it would serve any useful purpose to guard against fabricated or false testimony, the court can and should take proper steps to insure and assure a fair and impartial trial, and to guard as well as the circumstances will permit against false or fabricated testimony. But this bill does not show any injury. Nor does it appear it was even probable that injury was done.

Juror McLellan was accepted by both sides and sworn and placed in the jury-box. The district attorney made the following remark, to the court: "I have been told that some one of the jurors has sickness in the family, and perhaps should not serve; and I believe this is the man." The court replied by asking the juror the extent of the sickness in his family, and then turned to defendant and asked if he would excuse the juror; at the same time informing him he could do so or not as he pleased. Appellant replied that he did not wish to excuse the juror. Exception was taken to this action of the court. No reversible error is shown. It was left to appellant to excuse the juror, and get rid of him if he thought proper to do so, but did not.

While prosecutrix was on the stand, she was asked the ages of her children and the number, particularly the age of the two-months-old baby which she then held in her lap. Appellant objected for the reason that it was irrelevant and immaterial to the issue involved, and was calculated and intended to arouse prejudice and bitter feelings in the minds of the jury against him. How this injuriously affected the case is not shown by this bill. If it is intended to show injury by any action of the court had during the trial, the exception must show sufficiently the injurious effect to enable this court to intelligently revise. As this bill presents the matter, there is no error shown.

On the trial the clothing, consisting of a cap, pants, shirt and shoes, worn by appellant on the day of the alleged offense, was admitted in evidence: the objection being urged that it was "not competent," and that all "views" were abolished by the statutes of this State. We do not understand this is a "view" as contemplated by the statutes, and the bill is so meager that we are unable to see how the mere introduction of the clothing of appellant could have operated injuriously. Such testimony is often admissible for the purpose of identification and for

other purposes. If we were to go to the statement of facts for an investigation of this matter it would be shown that this action of the court was clearly correct. This clothing was important in the identification of appellant: especially the shirt, pants and shoes. This character of testimony has been usually permitted to go to the jury, when it served any useful purpose or was relevant to any issue in the case. Cole v. State, 45 Texas Crim. Rep., 225. The negro was a stranger to prosecutrix; met her near her residence, her husband had gone to the town of Schulenberg, about four and one-half miles distant. No one was at home at the time, except herself and little children, the oldest being about 5½ years of age. Her identification of the negro had been to some extent upon the clothing he wore, which was described fully before appellant's arrest. When arrested later during the day, appellant was dressed as indicated by prosecutrix. There came up during the trial a question as to the color of the shirt. She described it as of a yellowish color, and the pants as being dark with white stripes, and that he wore a black cap. There was some question as to her accuracy in the description of the shirt, it showing to be of a yellowish color, having been originally of slightly greenish color but had faded. The witnesses were freely interrogated in regard to the clothing in the presence of the jury, and they were fully identified as appellant's. Under the circumstances we do not believe there was any error in admitting this testimony.

Appellant took the stand in his own behalf. The district attorney asked him quite a number of questions in regard to his being in the neighborhood of where the rape should have been committed at various times, within a few days of the commission of the alleged rape; and then asked defendant if he was not under indictment for burglary of two houses in the immediate neighborhood where the crime was committed. Objections were urged that it was irrelevant, immaterial to any issue, and calculated and intended to prejudice the minds of the jury; and that it did so prejudice their minds against him. The court overruled these objections, "and admitted the testimony." These objections are very general and do not call the attention of the court to any particular portion of the testimony sought to be excluded or rejected. It is only the duty of the court to pass upon objections urged, and this court will only review such questions as were urged in the trial court. Some of this testimony was clearly admissible. It may be doubtful if the testimony in regard to the burglaries having been "committed in the immediate neighborhood" was admissible. No specific objection was urged along this line. Where some testimony is admissible and some not, it is the duty of the party objecting to point out specifically that portion of the testimony to which his objections would apply. This court will not select objectionable testimony. It must be pointed out by proper bill. As stated, there was no specific objection urged to the fact that the burglaries were said to have been committed near the scene of the alleged rape. As presented, we are

of opinion that the bill does not sufficiently raise any reversible error.

The insufficiency of the evidence is also urged as a ground for reversal. The identification of appellant by prosecutrix was positive, not only by his personal appearance but strongly aided by the clothing he wore. Perhaps one of the strongest points in the circumstances tending to connect appellant with the crime and show his presence at the place, were the tracks made as he fled. Near where the assault occurred was a branch, the water was not running but the sand was damp. The tracks were peculiar. Neither shoe had a heel; the left shoe was open at the toe, to such an extent that one or more of the toes protruded. The tracks in the branch showed the party who made them was wearing a shoe open at the toe, where the toes protruded and left their impress in the damp sand. It was the track of the left foot. Appellant's left shoe was in this condition, and both of his shoes were without heels. Both shoes were taken to the tracks, and fitted in them, and they corresponded exactly. Appellant's defense was an alibi; that he was in the town of Schulenberg from 9 o'clock a. m. until 4 o'clock p. m., covering the time when he should have been at the place of the assault. The State met this testimony by showing that he was absent from the town of Schulenberg from about 9 or 9:30 a. m. until about 3, perhaps 2:30 p. m., stating it most favorably for appellant. One of the witnesses testified that he thought he saw appellant riding along the street about the noon hour, about the hour the crime should have been committed, four and one-half miles away; but this witness was not definite in his identification. However, he states that the man he thought was appellant was riding one horse and leading two others; they were some distance apart, and witness simply glanced at him hurriedly, while standing on the depot platform, and would not swear it was appellant but thought so from general appearances. Another witness testified that appellant was at the livery stable from about 11 to 11:30 o'clock. This livery stable was about four and one-half miles from the scene of the rape. All of the other witnesses about the livery stable who testify, state that he was not there after about 9 or 9:30 o'clock a. m.; and Schwartz, the owner of the stable, states, appellant disappeared from the stable about 9 or 9:30 o'clock, and did not see him until late that afternoon, about 4 o'clock. Appellant in his own testimony states that he carried only two horses to the blacksmith shop, and not three. The blacksmith was introduced and testified that he only shod two horses that day for Schwartz. About 2:30 to 3:30 o'clock p. m., appellant made his appearance at the lumber-yard in Schulenberg, and asked one of the clerks as to the time of day. This is the only instance that this witness recollects appellant ever asked him the time of day. Appellant's testimony and that of the two witnesses by whom he undertook to prove an alibi, are so contradictory of each other that apparently it amounted to but little in the estimation of the jury. The State's evidence as to the identification of appellant and the clothing he wore,

which· he admits himself he was wearing, and which were introduced before the jury and thoroughly identified, and especially the peculiar tracks made by the assaulting party, seems to overwhelm him · with evidence of guilt.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.